TEXAS MEXICAN R'Y CO. v. W. M. LOCKE ET AL.

(Case No. 1863.)

1. PARTIES.— In a suit to compel a surveyor to make a survey and return the field notes thereof to the general land office, all who are known to assert claim to the land are proper parties.

2. VENUE.— The venue of a suit against a surveyor to compel the performance of an official duty is in the county of the surveyor's residence.

3. SAME.— The fact that others who are made parties defendant assert an adverse interest in the land will not constitute the proceeding such a suit involving title to land as to require or authorize its institution in the county where the land is situate.

4. SURVEYORS.— Deputy surveyors in unorganized counties attached to surveying districts are but aids to the district surveyor as such; it was not the purpose of the legislature in providing for their appointment to make them independent of the district surveyor, nor does their appointment relieve him from the duty of making surveys in such unorganized counties.

5. PLEADING IN MANDAMUS.— See statement of this case for allegations in a petition for *mandamus* to compel a surveyor to make a survey, *held* sufficient.

---

* The record in this case was not obtained in time to publish the opinion in 62 Texas.

APPEAL from Bexar. Tried below before the Hon. Geo. H. Noonan.

Appellant brought this suit for a *mandamus* to compel W. M. Locke, as district surveyor of Bexar land district, to make surveys of certain land described in plaintiff's petition and situated in the county of Zavalla; and to make correct field notes of said surveys and return the same to the general land office.

The following were the material allegations of plaintiff's petition:

*First.* That the defendant, W. M. Locke, had his office as district surveyor of Bexar land district in, and was a citizen of, the county of Bexar and state of Texas.

*Second.* That on the 22d day of July, 1881, the commissioner of the general land office issued to appellant ninety-five alternate land certificates for six hundred and forty acres of land each.

*Third.* That appellant was the owner of all said certificates.

*Fourth.* That by several files and entries and amendments thereto, all of which were set out in plaintiff's petition, and copies thereof attached to the petition as exhibits, plaintiff, during the months of January and February, 1882, filed said certificates in the office of W. M. Locke, district surveyor, etc., and entered the same for survey upon the land described in plaintiff's petition; and that the files and entries were recorded in the register of entries in the district surveyor's office, as required by law.

*Fifth.* That the land so filed upon was, at the date of the file and entry, vacant, unappropriated public domain of the state, subject to file, entry, location and survey by virtue of the certificates.

*Sixth.* That the land so filed upon was situated in the unorganized county of Zavalla, and that county, at the date of said entries and at the date of the institution of this suit, was situated within and formed a part of Bexar land district, and was within the official jurisdiction of W. M. Locke, as district surveyor.

*Seventh.* That on the 20th day of June, 1882, plaintiff tendered said Locke the full amount of the official fees to which he was entitled for making the survey of the land, and that he acknowledged the tender to be sufficient in amount, but refused to accept the same.

*Eighth.* That upon making the tender the plaintiff demanded of Locke that he proceed to survey the land, by virtue of the certificates, and make out correct field notes of surveys and record the same in his office, and return the same to the general land office, as it was his official duty to do; but that Locke refused to perform his said duty, or any part thereof.

*Ninth.* That by the said refusal plaintiff was rendered powerless to have the land surveyed, as required by law; and that he was entirely without remedy in the premises, unless the same be afforded by a writ of *mandamus.*

*Tenth.* That William S. Caruthers, of Travis county, Texas; Benjamin F. Buzard, of Buchanan county, Missouri; Moses Hilliard and Joseph S. Nanson, of St. Louis county, Missouri, and Gilbert A. Searight, of Wyoming Territory, were "wrongfully, unlawfully and fraudulently claiming, or pretending to claim, title to certain portions of the lands before described; but your petitioner does not know, and cannot show, the exact nature of said pretended claim, nor the portions of said land so claimed, but your petitioner alleges and charges that said pretended claim, or claims, are without foundation in law or fact, and are a fraud upon and an injury to your petitioner."

*Eleventh.* Prayer was made for citation to the claimants to appear and show cause why a peremptory writ of *mandamus* should not issue against W. M. Locke, district surveyor, etc., as prayed for; and further for a rule requiring W. M. Locke to appear and show cause why a peremptory writ of *mandamus* should not issue against him; and that, upon final hearing of the cause, such writ may issue commanding Locke to make an official survey of the land, by virtue of said certificates, and to make out correct field notes of said surveys, and record the same in his office, and return the same, together with the certificates and the written entries and applications, to the general land office.

This petition was presented in open court, and an order made that the clerk issue the citations and rule prayed for, and that the same be made returnable on the first day of the next term of the district court of Bexar county.

The clerk issued the rule to the surveyor, in accordance with said order, setting forth therein all the material allegations in plaintiff's petition, and requiring the said surveyor to appear and show cause why the writ of *mandamus* prayed for should not issue.

Locke appeared by attorney and filed what he styled a motion to "quash the alternative writ of *mandamus*," on various grounds stated in the motion.

Caruthers, Searight, Buzard, Hilliard and Nanson appeared by attorney and demurred to the petition upon various grounds, among others the following:

5th. It appears from the face thereof that it is an action to try the rights and titles of the defendants to land situated beyond the

limits and jurisdiction of Bexar county, and that this court has no jurisdiction of the subject-matter of the action touching the interest of these defendants.

The motion by the surveyor, Locke, to quash the alternative writ of *mandamus*, and the demurrer to plaintiff's petition, coming on to be heard, the court rendered judgment sustaining the motion and demurrer and dismissing the cause.

*Ogden, Ogden & Johnson*, for appellant, on alleged error in the ruling on the motion to quash, cited: United States *v.* Schurz, 102 U. S., 392; 4 Wait's Act. & Def., p. 359; High on Ex. Leg. Rem., pp. 390, 501–3; Moses on Mandamus, p. 201; art. 1446, R. S.; Fitzhugh *v.* Custer, 4 Tex., 391; Murphy *v.* Wentworth, 36 Tex., 147; Smith *v.* Power, 2 Tex., 67; Watkins *v.* Kirchain, 10 Tex., 375; Horton *v.* Pace, 9 Tex., 81; Winder *v.* Williams, 23 Tex., 601; Edwards *v.* James, 13 Tex., 52; De Montel *v.* Speed, 53 Tex., 339.

*Bethel Copewood*, for appellees, that the petition for *mandamus* was not sufficient, cited: R. S., arts. 1181, 1185, 1187, 1189, 1195, 1327, 1329, 1330, 1333, 3863, 3917, 4785, 4786, 4795; Tapping on Mandamus, 425, side pp. 389, 343, 365, 369, 382; Arberry *v.* Beavers, 6 Tex., 457, 464; Cullem *v.* Latimer, 4 Tex., 329; Houston Tap, etc., R. Co. *v.* Randolph, 24 Tex., 317; Moses on Mandamus, 19; Hoxey *v.* County Com. of Somerset, 25 Me., 333; Tabor *v.* Com., 29 Tex., 521; Miller *v.* Hays, 42 Tex., 486; De Montel *v.* Speed, 53 Tex., 339; Sayles' Texas Pl., sec. 7; Story's Pl., secs. 249, 257, 259, 261, 262, 264; Murray *v.* Hoboken Land, etc., Co., 18 How., 272; Pennoyer *v.* Neff, 95 U. S., 733; Cooley's Const. Lim., 435 (old p. 355), 493, 495; Huntsman *v.* State, 12 Tex. Ct. App., 645; Board of Land Com. *v.* Bell, Dallam, 367; Goodwin *v.* Glazer, 10 Cal., 333.

On jurisdiction, he cited: Tapping on Mandamus, 343, 365, 366, 373, 389; Cooley's Const. Lim., 493, 495; Com. *v.* Smith, 5 Tex., 484–5; Tabor *v.* Com., 29 Tex., 521; 7 Co., 3a; 1 Chitt. Pl., 271; Com. Dig., Actions, N. 4; R. S., art. 4795.

*H. E. Barnard*, also for appellees, filed a printed argument.

WATTS, J. COM. APP.— This is a proceeding to compel appellee Locke, as district surveyor of the Bexar land district, to survey the lands described in the petition, and to return the field notes thereof to the general land office. While that is the principal object, the other appellees, who assert some kind of claim to the land, are incidentally brought into the case, so as to more certainly enable ap-

pellant to accomplish the primal object of the proceeding. In such cases all persons who assert any claim to the land are proper parties, and should be required to appear and assert their claim, so as to enable the court to determine whether or not it is such as ought to preclude the complainant from securing the survey.

That is, if it should appear that others assert a claim to the land, this would be sufficient to defeat the application, unless such parties are brought before the court so that their rights might be determined, or rather to enable the court to determine whether they have any such right to the land as would defeat the application and preclude the survey. Tabor v. Commissioners, 29 Tex., 516; Smith v. Power, 2 Tex., 57; Watkins v. Kirchain, 10 Tex., 375.

As the principal object and purpose of the proceeding is to compel the surveyor to perform an official duty, the venue of the suit is to be determined by the county of his residence.

While Zavalla county is in the Bexar land district, it is attached to the county of Frio for judicial purposes, and Frio county is not in the Bexar land district. Gen'l Laws 1881, p. 68; R. S., art. 3883.

Now, unless the suit would come within some one of the exceptions to the general rule, that the defendant must be sued in the county of his residence, it is certainly true that Locke, as the surveyor of the Bexar land district, could not be sued in Frio county to compel him to perform an official act in his district.

And so far as Locke is concerned, it is very clear that the suit does not come within any of the exceptions to the general rule, and as to him, unless influenced by other considerations mentioned hereafter, it must be admitted that the suit was properly brought against him in the district court of Bexar county.

However, the proposition is asserted, that, as to the other appellees, the effect of the suit is the trial of the title to land, and hence as to them the suit must be brought in the county where the land is situated.

In the construction of the Revised Statutes the primary rule embraces all of its provisions. None of them are subject to a strict construction. Whether general provisions or exceptions, all alike must be liberally construed with a view to effect the object sought, and to promote justice.

Then let it be conceded that the result of this proceeding might affect the rights of the other appellees to the land. That is, while it cannot be considered a suit for the recovery of land or damages thereto, or to remove incumbrances upon the title, or to quiet the title, within the contemplation of clause 13 of article 1198, Revised

Statutes, still the judgment rendered in this case might have the effect to conclude these appellees from again asserting the same right or interest against appellant; but that would result from an application of the doctrine of estoppel, and not because it is a suit for the recovery of land or damages thereto in contemplation of the statute.

Such a construction as that contended for by the appellees cannot be maintained either upon reason or by authority. If it is true, then there is no court in which appellant can secure an adjudication upon its rights. And that would render the declaration in the Bill of Rights, that " all courts shall be open, and every person for an injury done him in his lands, goods, person or reputation shall have remedy by due course of law," the merest bombast. What profit is it to appellant that "all courts are open," if in none of these it can secure a remedy " by due course of law?"

Notwithstanding all the allegations in the petition may be literally true, that is, the land at the time of the location may have been *unappropriated public domain*, and subject to appropriation by the certificates filed by appellant, and notwithstanding everything had been done which would entitle appellant to a survey, still this would not constitute such title as would sustain an independent action against the other appellees. To sustain such an action for the recovery of the land, both a location and survey are essential. R. S., art. 4795.

Following up that construction, no suit could be maintained against Locke alone to compel him to make a survey, because it appears that the other appellees are asserting some kind of a claim to the land. Upon the one hand they cannot be made parties; upon the other, without making them parties there can be no adjudication. Surely such a result is not a sequence to the application of the primary rule of construction, for this would work a *defeat* of the object sought, and would promote the greatest *injustice*.

*Mandamus* was originally a prerogative writ which issued from the king's bench only to prevent a failure of justice, and where there was no other adequate legal remedy to enforce the performance of some duty in which the complainant was interested.

With us, as originally, it is issued only to prevent a failure of justice, and when there is no other clear and adequate remedy to enforce the performance of the duty.

There is nothing in the proposition so zealously urged by appellees in support of the judgment below, that appellant had an adequate legal remedy by an action for damages on Locke's bond. It is a

sufficient answer to that proposition to remark that an action for damages on the official bond of the surveyor, while it might result in a moneyed judgment against Locke and his sureties, would not result in the enforcement of a performance of his official duty to make these surveys for appellant. True, it might deter him from a refusal hereafter to perform his official duties, but that would not secure to appellant the land to which it might be entitled by virtue of these locations.

It is claimed that by reason of articles 3849 to 3853 of the Revised Statutes, the district surveyor is measurably relieved from doing field work in unorganized counties, and that while he *may* make surveys therein, the duty is not absolutely imposed by law.

It certainly was not the intention of the legislature, in providing for the appointment of deputy surveyors in unorganized counties, to make them independent of and place them above the district surveyor. They are but aids to the district surveyor in the discharge of his official duties as such. His powers are not impaired nor his duties curtailed by the appointment of the deputy. While it is not necessary for us to determine whether or not such a proceeding could be maintained against one of these deputies, we have not the slightest doubt but that in a proper case it may be maintained against the district surveyor.

If the land was in fact vacant, unappropriated public domain and subject to location at the time the file was made, then the district surveyor will not be heard to refuse a survey on the ground that it is doubtful whether he or his deputy should do the work. The law in such case clearly imposes the duty upon the district surveyor, either to make the survey himself or else to have it made by his deputy. In this respect they are considered inseparable,— the work of the deputy is the work of the surveyor; for it must receive his official sanction before it has validity. R. S., art. 3842.

Formerly greater certainty in the allegations contained in the petition for a *mandamus* was required than in ordinary cases. And it is not necessary in this case to determine whether or not that rule of strictness in pleading has been in any manner modified by the provisions of the Revised Statutes.

With respect to certainty in pleading in this character of suit the rule has been stated as follows: that the petition should state distinctly and precisely the circumstances so as to show that the party is entitled to this remedy; that the plaintiff has a clear right to, and that it is plainly the duty of the officer to perform the thing

demanded.    Cullem *v.* Latimer, 4 Tex., 329; Arberry *v.* Beavers, 6 Tex., 457.

In this case the allegations are quite as certain and specific as is required by the most stringent rule of pleading.    It is alleged that the certificates were valid and belonged to appellant; that the file was duly and legally made; and that the land at the time of the file was "vacant, unappropriated public domain" and subject to location by virtue of the certificates; and that Locke was the district surveyor of the Bexar land district, in which the land was situated; and notwithstanding his fees had been tendered, he refused to make the survey.    Admitting the truth of these allegations, then certainly there can be no room for doubt as to the right of appellant to have the surveys made, and the correlative duty of Locke to make them.

While perhaps, in accordance with the practice elsewhere, the proceedings had below upon the filing of the petition were not in accordance with the usual practice here, under our system the better practice would seem to be to file a petition as in other cases, praying for process, and upon final hearing an order directing the officer to perform the act.    Service upon this petition should be made in the same manner as in ordinary suits.

Here, however, upon the filing of the petition a rule was entered by the court requiring the officer to appear at the next term of the court and show cause why the *mandamus* should not issue.    This was not an alternative writ of *mandamus*.    It did not command the officer to make the surveys or else appear and show cause for failing to do so.    But it was a simple rule requiring him to appear at the next term of the court and show cause why an order should not be made directing him to perform the duty.    It was an informal mode of service, but Locke appeared in response thereto, and that is sufficient for the purposes of this case.

Our conclusion is that the court erred in the several rulings sustaining the motion of appellee Locke, and the exceptions of the other appellees, and in dismissing the petition.    And we therefore recommend that the judgment be reversed and the cause be remanded.

Reversed and remanded.

[Opinion adopted February 17, 1885.]